UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER ROBERTSON,

    Plaintiff,

v.                                                        Case No. 1:22-cv-710
                                                        Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied his claims for child's insurance benefits (CDB) and supplement security income (SSI).

On October 25, 2018, plaintiff, age 35, filed an application for child's insurance benefits (CDB) based on a disability which commenced when he was eight years old on November 11, 1991. PageID.39, 54. Plaintiff also filed an application for SSI with the same disability onset date. PageID.39. Plaintiff identified his disabling conditions as the result of a car accident: a head injury; broken bones; and "weak bones due to repair from the accident. PageID.226. Plaintiff earned a GED and took "a little bit" of online college courses. PageID.71, 82. Plaintiff has no past relevant work. PageID.54. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits on May 5, 2021. PageID.39-55.

The ALJ provided a preliminary explanation of plaintiff's claims:

    Although the claimant has alleged a disability onset date of November 11, 1991, he was previously found disabled as a child and reportedly received benefits

1

>from 1992 until he was incarcerated in November 2017 (See, e.g., Ex. 2E/7; 7E/1; 6F/2).  After reviewing this history, the State DDS suggested that the earliest possible date of consideration for the present application would be April 22, 2003 for the claimant's child disability benefits application, and October 25, 2018 for the claimant's supplemental security income application. Although the claimant's representative has reported an intent to amend the claimant's onset date, the record does not establish that this has yet been done (See Ex. 7E/1). Given the recommendations of the State DDS, though, I have considered April 22, 2003 as the earliest possible date of adjudication for the current decision.

PageID.39-40.[1]

The ALJ concluded that plaintiff has not been under a disability as defined in the Social Security Act from April 22, 2003, through May 5, 2021 (the date of the decision). PageID.55.  The ALJ's decision addressed plaintiff's applications separately.  First, the ALJ found that, "[b]ased on the application for child's insurance benefits protectively filed on October 25, 2018, the claimant was not disabled as defined in section 223(d) of the Social Security Act prior to June 13, 2005, the date he attained age 22." PageID.55.  Second, that ALJ found that, "[b]ased on the application for supplemental security income filed on October 25, 2018, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act." *Id*.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

       **I.**      **LEGAL STANDARD**

The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016).  This Court's review of the Commissioner's decision

---

[1] The ALJ stated that, "[u]nder the authority of the Social Security Act, the Social Security Administration has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is 18 years old or older and has a disability that began before attaining age 22 (20 CFR 404.350(a)(5))" (PageID.40).  Plaintiff's last favorable decision before age 22 was issued on April 22, 2003.  *See* Defendant's Brief (ECF No. 15, PageID.490, fn. 2); PageID.221.  The Court notes that plaintiff was 19 years old at the commencement of the adjudication period (April 22, 2003).  Given these circumstances, the ALJ reviewed plaintiff's claim using the five-step sequential analysis applicable to an SSI claim.

2

is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases."  *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007).  "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date."  *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

4

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. As a preliminary matter, the ALJ found that plaintiff had not attained age 22 as of April 22, 2003, the earliest possible date of adjudication. PageID.42. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since April 22, 2003. *Id.*[2] At the second step, the ALJ found that plaintiff had severe impairments of borderline intellectual functioning and an unspecified learning disorder. *Id.* At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.46.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember, and apply simple information. The claimant can also perform simple, routine, and repetitive tasks, but not at a production rate pace. Additionally, the claimant can make simple, work-related decisions and tolerate occasional workplace changes.

PageID.49. The ALJ also found that plaintiff has no past relevant work. PageID.54.

At step five, the ALJ determined that plaintiff could perform other, unskilled jobs existing in the national economy at all exertional levels. PageID.54-55. Specifically, the ALJ found that plaintiff could perform the requirements of occupations in the national economy such as hand packager (150,000 jobs), laundry laborer (100,000 jobs), and recycling plant laborer (75,000 jobs). *Id.* Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from April 22, 2003 (the earliest possible date of adjudication) through May 5, 2021 (the date of the decision). PageID.55.

---

[2] Since 2003, plaintiff has earned a total income of $4,699.61. *See* PageID.42 (listing the following income from work activities: 2003 ($222.00); 2005 ($77.73); 2016 ($1,734.52); 2018 ($1,870.50); Q2 2019 ($794.86)).

### III. DISCUSSION

Plaintiff raised two related errors on appeal.

**A. The ALJ committed reversible error by failing to find that plaintiff met a Medical Listing.**

**B. The ALJ committed reversible error by wrongly assessing both the credibility of the plaintiff and of the consultative examining psychologist (Mr. Reilly/Dr. Lozer).**

The ALJ set out plaintiff's disability claim as follows:

> The claimant alleges disability resulting from the residual effects of a remote motor vehicle collision, low back pain, a traumatic brain injury, depression, and anxiety (Ex. 2E; 4E; 7E; 16E; Hearing Testimony). He further asserts that these conditions limit his abilities to lift, bend, twist, concentrate, understand, learn, remember, follow instructions, complete tasks, maintain work pace, get along with others, and adapt to changes (Ex. 4E; 16E; Hearing Testimony).

PageID.49. As discussed, *infra*, while the ALJ characterized plaintiff's claims as "from the residual effects of a remote motor vehicle collision," plaintiff was found disabled as a result of those childhood injuries from that collision and received disability benefits into adulthood.

Plaintiff contends that he met the requirements of Listing 12.05 ("Intellectual disorder"). It is unclear as to which provision of Listing 12.05 is at issue. Plaintiff's brief refers to Listing "12.05(c)". Assuming that this is Listing 12.05C, that listing does not apply because it was eliminated from the Listing of Impairments effective January 17, 2017. *See Johnson v. Commissioner of Social Security*, No. 1:20-cv-1223, 2022 WL 4376592 at *5 (W.D. Mich. Sept. 22, 2022).

The ALJ addressed Listing 12.05 as follows:

> Turning back to listing 12.05, this listing is based on the three elements that characterize intellectual disorder: significantly subaverage general intellectual functioning; significant deficits in current adaptive functioning; and the disorder manifested before age 22.

6

The required level of severity for this disorder is met when the requirements in paragraphs A or B are satisfied.

Paragraph A requires the following:

1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

In this case, these requirements are not met because the record establishes that the claimant was able to participate in standardized testing of his intellectual functioning in March 2021 (Ex. 6F). Furthermore, the claimant has reported engaging in an array of activities that demonstrate his abilities to care for his personal needs, including doing light factory work, driving, preparing meals occasionally, washing dishes, doing household chores, caring for his personal hygiene, using a cell phone, exchanging emails with others, using public transportation, exercising, and going for walks (Ex. 2E/3; 1F/29-30; 4F/2, 12; 6F/3-4; Hearing Testimony).

Paragraph B requires the following:

1. Significantly subaverage general intellectual functioning evidenced by a or b:

    a. A full-scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

    b. A full-scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by an extreme limitation of 1, or marked limitation of 2, in the following areas of mental functioning:

> > a. Understand, remember, or apply information (see 12.00E1); or
> >
> > b. Interact with others (see 12.00E2); or
> >
> > c. Concentrate, persist, or maintain pace (see 12.00E3); or
> >
> > d. Adapt or manage oneself (see 12.00E4); and
>
> > 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.
>
> In this case, these requirements are not met because the record does not establish that the claimant has a full-scale IQ score of 70 or below. Additionally, although the claimant recorded a full-scale IQ score of 71 on March 2021 Wechsler Adult Intelligence Scale ("WAIS-IV") testing, his verbal comprehension and perceptual reasoning scores each exceeded 70 (Ex. 6F). I also reiterate that the record does not establish that the claimant has an extreme limitation of 1, or marked limitation of 2, of the "paragraph B" areas of functioning.

PageID.47-49.

A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir. 1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 416.925(d). *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987) (a claimant does not satisfy a particular listing unless all of the requirements of the listing are present).

"When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *Thacker v. Social Security Administration*, 93 Fed. Appx. 725, 728 (6th Cir 2004).

> For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.

*Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. § 416.920(d).

Here, plaintiff's claim of error relates to the ALJ's evaluation of Neil Reilly, M.A. and James Lozer, Ed. D. The ALJ addressed the opinion as follows:

> In March 2021, the claimant attended a psychological consultative examination with limited licensed psychologist Neil Reilly, M.A. At this evaluation, the claimant reported difficulties with concentrating, understanding, learning, remembering, and completing tasks. Mr. Reilly observed that the claimant demonstrated poor concentration, poor memory, 1 math calculation error in 5 formulas, and limited insight, but stressed that he remained oriented and cooperative with appropriate hygiene, clear speech, logical thought processes, intact fund of information, and otherwise correct math calculation abilities in 4 of 5 formulas. Mr. Reilly also administered Wechsler Adult Intelligent Scale ("WAIS-4") testing, upon which the claimant recorded a verbal comprehension score of 72, a perceptual reasoning score of 73, a working memory score of 71, a processing speed score of 89, and a full-scale IQ score of 71. After reviewing these results, Mr. Reilly assessed the claimant with borderline intellectual functioning and unspecified learning disorder. Notably, James Lozer, Ed.D., co-signed Mr. Reilly's report (Ex. 6F). . . .
>
> Following his March 2021 psychological consultative examination, Mr. Reilly concluded that the claimant had marked limitations in his abilities to understand, remember, and apply information, explaining that "his ability to acquire (and) retain new information is quite compromised, (as) he is able to remember locations that he is regularly familiar with but will struggle (when he tries) to follow directions to someplace unfamiliar." Mr. Reilly added that "I believe (the claimant) can follow simple instructions, but (he) may have trouble doing so consistently over time without reminders or additional directions." Furthermore,

9

> Mr. Reilly advised that the claimant had moderate-to-marked limitations in his abilities to maintain concentration, persistence and pace, noting that "I believe he (can) carry out simple routine tasks, but again (he) may struggle doing so consistently without reminders." Mr. Reilly also remarked that the claimant's "ability to sustain concentration over time is poor, which can affect his persistence and pace, (as) he reports a history of struggling to work at pace and past employment situations." Additionally, Mr. Reilly indicated that the claimant had mild-to-moderate limitations in his ability to interact with others, advising that "I believe he is able to ask for help but may struggle handling criticism." Finally, Mr. Reilly suggested that the claimant had moderate limitations in adaptation and self-management, explaining that "I believe he can adapt to changes in setting." As noted above, Dr. Lozer co-signed Mr. Reilly's opinion (Ex. 6F).
>
> I find the opinion of Mr. Reilly and Dr. Lozer unpersuasive because it is inconsistent with the medical evidence and the record as a whole, including the claimant's limited history of mental health treatment, the generally unremarkable mental status examination findings, the claimant's work activity, and the claimant's other reported activities of daily living, as detailed above. Specifically, Mr. Reilly's conclusion that the claimant had marked limitations in his abilities to understand, remember, and apply information, and to maintain concentration, persistence, and pace, would suggest that the claimant's functioning in these areas "independently, appropriately, effectively, and on a sustained basis is seriously limited." Such a conclusion is contradicted by the claimant's own reports that he has been able to complete his GED, attend online college classes, do light factory work, drive, prepare meals, use a cell phone, use public transportation, and engage in a variety of exercise, as discussed above. Indeed, the manner in which Mr. Reilly phrased his opinion suggests that he may have relied quite heavily on the claimant's subjective report of symptoms and limitations, and that he may have uncritically accepted as true most, if not all, of what the claimant reported at this single evaluation. Yet, as explained above, there exist good reasons for questioning the consistency of the claimant's subjective complaints.

PageID.51-53.

With respect to the first claim of error, the relevant listings in this case are Listings 12.05A and 12.05B. Plaintiff has failed to address how he meets the requirements of either listing. *See Sullivan*, 493 U.S. at 530. Accordingly, that claim of error is denied.

With respect to the second claim of error, plaintiff contends that the ALJ failed to properly evaluate the Reilly/Lozer opinion. For claims filed on or after March 27, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any

specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.1520c(a). In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. § 416.920c(b). In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and, (5) other factors. *See* 20 C.F.R. § 416.920c(c)(1)-(5).[3]

The ALJ has failed to provide substantial evidence to support his determination that Mr. Reilly's opinion was unpersuasive. Mr. Reilly's "Medical Source Statement" appears consistent with the examination: that plaintiff had marked limitations with respect to understanding, remembering and applying information; that plaintiff had moderate to marked limitations with respect to concentration, persistence, and pace; that plaintiff had mild to moderate limitations with respect to social interaction; and that plaintiff had moderate limitations with respect to adaptation and self-management. PageID.463. Plaintiff reported that he suffered serious injuries when he nine years old, "he was struck by a car as a pedestrian . . . suffered a severe head injury and spent a month in a coma and later had to relearn to walk, eat and talk. . . he spent about 2 years in intensive rehabilitation followed by an additional 2 years of physical therapy." PageID.458. Plaintiff reported that "he was in special education throughout his years in schooling

---

[3] The "other factors" in 20 C.F.R. § 920c(c)(5) are as follows:

> We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

11

from the time of his accident until he finished high school." *Id*. Plaintiff stated that "he had been on benefits since childhood and that the benefits were stopped when he was incarcerated" for 18 months in 2016. PageID.458-459.

Mr. Reilly examined plaintiff on March 29, 2021 (Exh. 6F). PageID.458-464. Based on Mr. Reilly's report (co-signed by Dr. Lozer), it appears that plaintiff's main problems are that "[h]is memory and concentration were poor." PageID.460. As to recent memory,

> Mr. Robertson was able to recall only 1 of 3 objects following delay. With category prompting he remembered the second item and with multiple choices recognized the third item as well.

PageID.461. When asked to identify recent presidents, he stated "Joe Biden, Martin Luther King . . . Obama . . ." *Id*. After prompting plaintiff added "George W. Bush." *Id*. Plaintiff answered the multiplication problem incorrectly ("5x7=34") and was unable to repeat serial 3's ("100, 97, 94, 87, 84, 79"). *Id*. Plaintiff's testing of verbal comprehension (72/borderline range), perceptual reasoning (73/borderline range), working memory (71/borderline range), and fullscale IQ (71/borderline range) placed him in the 3rd or 4th percentile. PageID.462. Based on the testing, Mr. Reilly concluded,

> [Plaintiff's] overall intellectual functioning falls at the low and [sic] of the borderline impaired range and at the third percentile. He demonstrated consistent performance across 3 of the 4 main indexes. He demonstrated a relative strength on measures of processing speed where he scored at the 23rd percentile. Comparatively, his measures of verbal comprehension visual reasoning and working memory all measured at or below the 4th percentile.

PageID.462-463.

As an initial matter, plaintiff's present disability claim must be viewed in context. Plaintiff was determined to be disabled as a child due to the traumatic injuries. However, the records of plaintiff's previous disability award are not in the administrative transcript and may not exist. At the administrative hearing, plaintiff's counsel inquired about plaintiff's disability records

12

from the 1990's until he was sent to prison in 2016, but it appeared that there was no file available. PageID.66-68.  As such, plaintiff's testimony was the only source of the evidence regarding the determination of his childhood disability and the extent of that disability.  Notably, plaintiff testified that he did not re-apply for benefits after he turned 18 because he lived with his guardian who was in charge of his money and plaintiff did not handle his own disability benefits. PageID.76. With respect to the accident which caused his head injury, plaintiff stated that it has "taken a toll" on his memory, specifically his short term memory.  PageID.79.  Plaintiff did not complete high school and stated that he earned his GED at age 23 and "did a little bit of college online."  PageID.71, 82.

With respect to the plaintiff's second error, the ALJ found the Reilly/Lozer opinion unpersuasive because Mr. Reilly "*may* have relied quite heavily on the claimant's subjective report of symptoms and limitations, and that he *may* have uncritically accepted as true most, if not all, of what the claimant reported at this single evaluation."  PageID.53 (emphasis added).  This is not a basis to reject the opinion as unpersuasive.

A claimant's "self-reported history and subjective complaints" must be supported by objective medical evidence.  *Ferguson v. Commissioner of Social Security*, 628 F.3d 269, 273 (6th Cir. 2010). In reviewing the objective medical evidence, the Sixth Circuit recognizes that "[m]ental disorders are not uncommonly diagnosed after one interview." *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989).  As the court explained:

> [A] psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment . . . consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine . . . In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices [sic] in order to obtain objective clinical manifestations of medical illness . . . . [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals

13

> trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship*, 874 F.2d at 1121, quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987). Here, Mr. Reilly's examination and testing provided that objective medical evidence.

For these reasons, the Court concludes that the ALJ's evaluation of the Reilly/Lozer opinion is not supported by substantial evidence. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner will be directed to re-evaluate this opinion.

### IV. CONCLUSION

For these reasons, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate Mr. Reilly and Dr. Lozer's opinion regarding the March 29, 2021 evaluation. A judgment consistent with this opinion will be issued forthwith.

Dated: September 25, 2023　　　　　　　　　　/s/ Ray Kent
　　　　　　　　　　　　　　　　　　　　　　RAY KENT
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge